```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

MICHAEL P. STEIGERWALT,          :
                                 :
         Plaintiff,              :   HONORABLE JOSEPH E. IRENAS
                                 :   CIVIL ACTION NO. 06 CV 1855 (JEI)
    v.                           :
                                 :            **OPINION**
TERMINIX INTERNATIONAL           :
COMPANY,L.P., TERMINIX           :
INTERNATIONAL, INC.,             :
TERMINIX COMMERCIAL,             :
SERVICEMASTER CONSUMER           :
SERVICES, LIMITED                :
PARTNERSHIP, and                 :
JOHN DOES 1-5, Jointly,          :
Severally, and In the            :
Alternative,                     :
                                 :
         Defendants.             :

**APPEARANCES:**

SALTZ, MONGELUZZI, BARRETT & BENDESKY, PC
By:  Robert J. Mongeluzzi, Esq.
Plaza 1000 at Main Street
Suite 206
Voorhees, New Jersey 08043
         Counsel for Plaintiff

COUGHLIN DUFFY, LLP
By:  Michael J. Sullivan, Esq.
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
         Counsel for Defendant, Terminix International
         Company, LP


**IRENAS**, Senior District Judge:

   Presently before the Court is Defendant Terminix International Company, LP's (hereinafter "Terminix")[1] Partial Motion pursuant to Fed. R. Civ. P. 12(b)(6) to Dismiss Counts I,

---

[1] The other Defendants named in the Complaint have not been served with process.

III, and IV of Plaintiff Michael Steigerwalt's Complaint for injuries sustained as an employee of Terminix.[2]  Additionally, Terminix moves to stay this litigation and compel arbitration pursuant to the parties' agreement.

For the reasons set forth below, Terminix's Partial Motion to Dismiss Counts I and III will be granted to the extent that they allege conduct subject to the tort bar in N.J.S.A. § 34:15-8 of the Workers' Compensation Act, but will be denied to the extent that those counts allege an intentional wrong as defined by the Supreme Court of New Jersey in the cases discussed, infra, in Part III A. of this Opinion.  To the extent that Counts I, II, and III allege an intentional wrong they will be deemed a single Count.  The motion to dismiss Count IV will be denied.  The Motion to Stay this litigation with respect to the intentional tort claims and to order arbitration will be denied.

**I.**

**A.**

Plaintiff, Michael Steigerwalt, was an employee of Defendant Terminix, an insect control and fumigation company.  When Terminix hired Steigerwalt, the parties entered into an arbitration agreement as a part of Steigerwalt's employment

---

[2]   The Court has subject matter jurisdiction based on diversity of citizenship.  See 28 U.S.C. § 1332.  Plaintiff is a citizen of New Jersey and Defendants are citizens of Delaware and Tennessee.

contract.  (Sullivan Cert. Ex. B).[3]

On May 13, 2004, Terminix directed Steigerwalt to perform a fumigation job at Lyons and Sons in Pennsauken, New Jersey. (Compl. at ¶14).  At the direction of a supervisor, Steigerwalt and his co-workers placed tarps over cocoa beans and then gassed the tarps with methyl bromide, an extremely toxic, anti-fungal bug exterminator with extreme inhalation hazards.  (*Id*. at ¶15). Steigerwalt and his co-workers were not provided with respirators, self-contained breathing apparatus (SCBAs), or other equipment to prevent injuries that may result from exposure to methyl bromide.  (*Id*. at ¶16).  Throughout the course of the fumigation job, Steigerwalt inhaled methyl bromide which allegedly resulted in serious personal injuries, including methyl bromide toxicity, two weeks in a coma, brain injuries, severe neurocognitive defects, neurological injuries, and injuries to his nerves and nervous system.  (*Id*. at ¶17).

The Occupational Safety and Health Administration ("OSHA") investigated the incident and cited Terminix for two willful violations of health standards, four serious violations of health standards, and three other-than serious violations.  Defendants were required to pay a penalty of $119,250.00. (*Id*. at ¶25).

Steigerwalt alleges that prior to the May 13, 2004 incident,

---

[3] The parties' "Arbitration Agreement" was physically attached to, and explicitly incorporated in, the "Employment Agreement."  Also, both "agreements" were executed on the same day.  Accordingly, the Court will construe the "Arbitration Agreement" and the "Employment Agreement" as a single contract.

3

Terminix had actual or constructive knowledge of the health risks associated with methyl bromide exposure.  (*Id*. at ¶18).  Steigerwalt also alleges that Defendants' general manager, Tony Simone, requested "air pacs" for those employees who would be working with methyl bromide.  (*Id*. at ¶23).  Simone's request was denied, according to Steigerwalt, because Defendants' vice president of sales and service said, "$136.00 per month for five years was too much to spend."  (*Id.* at ¶23).  Additionally, Steigerwalt contends that Defendants did not perform safety audits to ensure protection from the hazards of methyl bromide exposure.  (*Id*. at ¶22).

According to the Complaint, one of Defendants' general managers, in reference to the employees' exposure on May 13, 2004, stated, "there was no good reason why they [the exposed employees] did not wear respirators, it was an oversight, I should have ensured that training was done" and "I think we all disregarded safety, I was busy doing other stuff such as administrative and corporate stuff."  (*Id*. at ¶21).

**B.**

On March 20, 2006, Steigerwalt filed suit against Defendants in the Superior Court of Camden County, New Jersey, alleging intentional misconduct, negligence, and a claim for punitive damages.  Defendants removed the case to this Court based on diversity of citizenship.  Terminix moves to dismiss

4

Counts I, III, and IV of the Complaint, stay this litigation and compel arbitration.

All four Counts basically deal with the same alleged wrongful conduct.  The heading to Count I is "PLAINTIFF V. ALL DEFENDANTS."  Count II's caption contains the phrase "INTENTIONAL WRONG."  "NEGLIGENCE" finds its way into the caption of Count III, while Count IV merely alleges respondeat superior and does not even deal with the theory of liability.  In reality, The first three Counts muddle the theory of liability.  Count I describes Defendants' actions as "willful and wanton conduct, recklessness, gross negligence, and negligence." (*Id.* at ¶30).  Count II alleges Defendants were "careless, negligent, grossly negligent and reckless."  (*Id.* at ¶41).  Plaintiff's allegations in Count III mirror those in Count I. (*Id.* at ¶47).

Terminix originally moved to dismiss the Complaint in its entirety.  However, after the motion was filed, and as a result of an agreement between Steigerwalt and Terminix, Terminix agreed to withdraw its motion with respect to Counts II (intentional wrong) and V (punitive damages) of the Complaint.  It would appear that the basis of this agreement was that, at least for purposes of Fed. R. Civ. P 12(b)(6), the allegations in the complaint sufficiently asserted an intentional wrong by the employer to avoid the tort bar contained in N.J.S.A. § 34:15-8 of the Workers' Compensation Act.

**II.**

A Court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *In re Party City Sec. Litig.*, 147 F.Supp. 2d 282, 297 (D.N.J. 2001)(citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993); *Semerenko v. Cendant Corp.*, 223 F.3d 165,173 (3d Cir. 2001)). Granting a motion to dismiss under Fed. R. Civ. P. 12 (b)(6) can result in a dismissal at an early stage of a case; therefore, all allegations set forth by a Plaintiff must be taken as true and all reasonable factual inferences drawn in his or her favor. *Id.* (citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 475 (1999); *Semerenko*, 223 F.3d at 173).

A complaint may not be dismissed unless it appears beyond doubt that "'the facts alleged in the complaint, even if true, fail to support the claim.'" *Id.* (quoting *In re Warafin Sodium*, 214 F.3d 395, 397 (3d Cir. 2000)). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. *Id.*

A Court reviewing the sufficiency of a complaint has a limited role. The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Id.* (citing *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000)).

6

The Federal Arbitration Act states that a court "*shall* on application of one of the parties" stay any suit pending before it if an issue involved in the dispute is referable to arbitration under the parties' agreement.  9 U.S.C. § 3 (emphasis added); *see also Lloyd v. Hovensa,* 369 F.3d 263, 270 (3d Cir. 2004) ("§ 3 of the FAA, as we have noted, mandates that a stay be entered by the District Court.").  The Third Circuit has explained, however, that while the FAA reflects a liberal policy favoring arbitration, the policy "is at bottom a policy guaranteeing the enforcement of private contractual arrangements and because arbitration is a matter of contract, . . . no arbitration may be compelled in the absence of an agreement to arbitrate."  *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 281 (3d Cir. 2003) (internal quotations omitted; quoting *Sandvik v. Advent Int'l Corp.*, 220 F.3d 99, 104-07 (3d Cir. 2000)).

### III.

Terminix asserts that the majority of the claims asserted in the Complaint-- all claims except those based on Terminix's alleged intentional misconduct and the claim for punitive damages--  are barred by the exclusivity provision of New Jersey's Workers' Compensation Act, N.J.S.A. § 34:15-8. Additionally, Terminix asks this Court to stay this litigation

and compel the parties to arbitrate the intentional misconduct and punitive damages claims (the claims not challenged by the motion to dismiss) in accordance with the arbitration agreement entered into between the parties.

In opposition, Steigerwalt asserts that his claims are not barred by the exclusivity provision of New Jersey's Workers' Compensation Act. He further contends that the allegations contained in his Complaint do not fall within the scope of the arbitration agreement with Defendants and even if they did, the agreement is void for public policy reasons and therefore unenforceable.

### A.

Terminix asserts that Steigerwalt's claims based on Terminix's alleged "willful and wanton conduct, recklessness, gross negligence, carelessness, and negligence" are all barred by New Jersey's Workers' Compensation Act.

To place the present motion in context, a brief discussion of New Jersey's Workers' Compensation system is appropriate. The Workers' Compensation system "relieve[s] the injured employee of the burden of paying for his own medical care and replace[s] his lost wages," *Medical Diagnostic Assocs. v. Hawryluk*, 317 N.J. Super. 338, 343 (App. Div. 1998),[4] without regard to the fault of

---

[4] Overruled in part on other grounds by *Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou*, 180 N.J. 334 (2004).

either party.  *Brock v. Public Service Electric & Gas Co.*, 325 N.J. Super. 582, 588 (App. Div. 1999).

In exchange for immediate automatic payment of medical expenses and lost wages, employees relinquish their right in most instances to pursue common law suits arising out of work-related injuries.  *Laidlow v. Hariton Machinery Co., Inc.*, 170 N.J. 602, 605 (2002).  N.J.S.A. § 34:15-8 states:

> Such agreement[5] shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.
>
> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong.*

(emphasis added).  Thus, in all cases, employees injured on the job are entitled to medical expenses and lost wages pursuant to the Workers' Compensation Act.

---

[5] All employment contracts made after July 4, 1911, are presumed to incorporate the provisions of the Workers' Compensation statute unless the employment contract expressly states in writing that the parties wish to opt out of the provisions.  N.J.S.A. § 34:15-9; *Schmidt v. Smith*, 155 N.J. 44, 49 (1998).  Steigerwalt does not assert that his employment contract exempted him from the statute's requirements.  *See Staubach v. Cities Service Oil Co.*, 126 N.J.L. 479, 483 (N.J. Sup. Ct. 1941) ("There is no allegation in the complaint that the contract of employment between defendant company and plaintiff's deceased husband contained any express statement in writing that article 2 (Elective Compensation) of our Workmen's Compensation Act, was not intended to apply, nor that any written notice to that effect was given. It is thus presumed that the parties accepted and were bound by the provisions of that article.").

A subset of those employees injured on the job-- namely those injured as a result of an "intentional wrong"-- are entitled to pursue common law remedies in court, in addition to pursuing remedies through the Workers' Compensation system. The New Jersey Supreme Court has explained, "[i]f [claims against the employer under the 'intentional wrong' exception] are filed after employees have already received workers' compensation benefits, the doctrine of election of remedies does not affect the workers' common-law claims." *Kristiansen v. Morgan*, 153 N.J. 298, 312 (1998)(citing *Millison v. E.I. du Pont de Nemours & Co.,* 101 N.J. 161, 186 (1985)).[6] In "intentional wrong" cases, the employer's conduct has rendered the Workers' Compensation bargain of immediate benefit payments in lieu of traditional tort remedies a "nullity." *Laidlow*, 170 N.J. at 606.

In this case, the Court only addresses Steigerwalt's claims at common law, without regard to any claims and remedies he may pursue through the Workers' Compensation system.[7] Terminix asserts that the bulk of Steigerwalt's claims (all but those based on alleged "intentional wrongs") must be dismissed because they are premised on alleged conduct that does not meet the "intentional wrong" exception to the bar found in N.J.S.A.

---

[6] Double recovery, however, is not permitted. *Kristiansen*, 153 N.J. at 312.

[7] Indeed, it is not apparent at this early stage of the case whether Steigerwalt has received benefits or has filed a Workers' Compensation petition. It appears from the allegations in the Complaint that Steigerwalt's time to file a petition for compensation expired around May 13, 2006. *See* N.J.S.A. § 34:15-51.

10

§ 34:15-8.

In opposition, Steigerwalt implicitly concedes that the Workers' Compensation statute bars his claims based on Terminix's non-"intentional" conduct.  However, he argues, the Workers' Compensation bar only applies to immediate employers (i.e., Terminix) and does not apply to the other Defendants in this case.  Therefore, Steigerwalt urges, the Court should not dismiss the non-"intentional" conduct claims because they are asserted against all Defendants, not just Terminix.

Steigerwalt's argument, however, fails to recognize that only Terminix has moved to dismiss.[8]  Accordingly, the only issue before the Court at this time is whether the Workers' Compensation exclusivity bar applies to the claims against Terminix, Steigerwalt's immediate employer.  Steigerwalt's argument regarding the other Defendants is irrelevant to the present motion.[9]

The Complaint alleges that Steigerwalt was injured on May 13, 2004, while performing fumigation work in "the course and scope of his employment" with Terminix.  (Compl. ¶ 14)  To the extent that those injuries were allegedly caused by Terminix's non-"intentional" conduct, they are barred by N.J.S.A. § 34:15-8. *See Smith v. Exxon Mobil Corp.,* 374 F. Supp. 2d 406, 424 (D.N.J.

---

[8] As noted *supra,* fn. 1, none of the other Defendants have been served with process.

[9] Because the argument with respect to the other Defendants is irrelevant, the Court expresses no opinion on its merits.

2005).  Accordingly, Terminix's Motion to Dismiss all claims based on Terminix's alleged non-intentional conduct will be granted.  To the extent that Counts I, II and III allege intentionally tortious conduct, the motion will be denied and these will be treated as a single count.  The motion to dismiss Count IV, which asserts Terminix's respondeat superior liability for the acts of its officers, agents or employees will be denied.

**B.**

Turning to the motion to stay the litigation with respect to the remaining claims, the first issue is the applicable law. Although this is a diversity case, the parties' arbitration agreement states that it "will be governed [by] and construed in accordance with the Federal Arbitration Act."  (Sullivan Cert. Ex. B)  Accordingly, the Court applies federal law[10] to decide whether this case falls within the scope of the arbitration agreement; thereby determining whether the litigation should be stayed.[11]  *Medtronic AVE Inc.*, 247 F.3d at 54;  *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003) ("federal law applies to the interpretation of

---

[10] Even without the choice of law clause, the parties' contract is subject to the FAA because the parties provide services in interstate commerce and do not act directly in the channels of commerce.  *See Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 226 (3d Cir. 1997).

[11] The parties do not dispute that they have a binding agreement to arbitrate.

12

arbitration agreements . . . thus, whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law.")(internal quotations omitted).

The Arbitration Agreement is a standard form contract drafted by Terminix.  It states in relevant part:

> 1.  Agreement to Arbitrate All Employment Disputes.  Private Arbitration is the referral of a dispute to an impartial third party, instead of a court or jury, for a final and binding decision.  Any dispute arising out of Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration administered by the American Arbitration Association under its National Rules for the Resolution of Employment Disputes, or as mutually agreed.
>
> . . .
>
> 4.  Arbitrator's Authority.  The arbitration will be conducted according to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. . . . The parties are entitled to all remedies allowed by statute that would have been available had the party brought the matter in court . . .
>
> 5.  Arbitrable claims.  The parties understand that, except as otherwise provided by law, this Agreement applies to all claims, including, but by no means limited to, claims for breaches of any contract (express or implied), discrimination, torts, and/or claims based upon any federal, state or local ordinance, statute, regulation, contractual provision, or any other law.

(Sullivan Cert. Ex. B)

The issue is whether Steigerwalt's intentional wrong claim is encompassed by the Agreement's terms.  As the Third Circuit

13

has stated, this is an issue of contract regarding what the parties intended. *See China Minmetals Materials Imp. & Exp. Co., Ltd.*, 334 F.3d at 281. If the parties did not agree to arbitrate certain claims, the Court will not compel arbitration of those claims. *See id.*

The Agreement states that it is an "Agreement to Arbitrate all Employment Disputes." While "Employment Disputes" is not defined by the contract, the very first paragraph of the agreement states that "any dispute arising out of Employee's employment with Employer, *including termination of employment and all statutory claims,* will be submitted to binding arbitration." (emphasis added). In this case, however, Steigerwalt's claims are neither based on termination or statutory in nature. Rather, he asserts a common law tort claim. The question thus becomes, is "employment disputes" exclusively limited to statutory claims and claims arising out of an employee's termination? Guided by basic maxims of contract interpretation, the Court must answer yes.

The principle of *ejusdem generis* instructs that "the meaning of a general term in a contract is limited by accompanying specific illustrations." 5-24 Corbin on Contracts § 24.28; *see generally First Nat'l Bank v. Perth Amboy Iron & Metal Co.,* 119 N.J. Eq. 569 (1936)(applying *ejusdem generis* to interpret a contract). "[T]hrough the application of this canon, general words are not to be construed in their widest extent, but are to

14

be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Isetts v. Borough of Roseland,* 364 N.J. Super. 247, 258 (App. Div. 2003)(internal quotations omitted).

Thus, interpreting the parties' Arbitration Agreement, the Court holds that the general term, "employment disputes" is limited by the language "termination of employment and all statutory claims contained in the Agreement's very first paragraph." So limited, the Court cannot construe the Agreement as encompassing common law torts, as such claims are not "of the same general kind or class" as termination claims or statutory claims.

In paragraph 4 the Agreement entitles the plaintiff "to all remedies allowed by *statute* that would have been available had the party brought the matter in court including but not limited to preliminary and other injunctive relief for violations of the terms of this Agreement." (emphasis added)(Sullivan Cert. Ex. B). This reference, seeming to limit remedies solely to those provided by statute, strongly suggests that the drafter of the Agreement considered "Employment Disputes" to cover the type of work place claims now generally covered by statute such as discrimination, wage and hour disputes, whistle blowing issues, etc. There is nothing in the Agreement or in the AAA Employment Arbitration Rules referred to therein which suggests the parties agreed to arbitrate that highly unusual common law workplace

15

personal injury claim which is not excluded by the tort bar contained in almost all workers' compensation statutes.

This conclusion is further supported by the principle of *contra proferentem*: Where two reasonable meanings are possible, the Court should interpret the contract against the draftsman. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 179 N.J. 87, 96 (2004); *see generally* 5-24 Corbin on Contracts § 24.27. The Court finds application of this doctrine particularly appropriate, when, as here, an employee is required to sign his employer's standard form agreement as a condition of employment, without an opportunity to negotiate terms. Terminix drafted the Agreement, therefore the parties' Agreement should be construed against Terminix. The Court cannot conclude that a reasonable employee, after reading the first paragraph of the arbitration agreement would conceive that he was surrendering his right to seek a court remedy for personal injuries occasioned by an employer's intentional conduct.

Moreover, the Agreement's express incorporation of the AAA's "National Rules for the Resolution of Employment Disputes"[12] also supports the conclusion that "employment disputes" contemplates claims for employment discrimination and sexual harassment, for

---

[12] The Rules have been renamed the "Employment Arbitration Rules and Mediation Procedures." The AAA has directed that "[a]ny arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures." Employment Arbitration Rules and Mediation Procedures, Rule 1, *available at* www.adr.org.

example, and not common law tort claims arising out of on-the-job injuries.  It is clear from the Rules as a whole that AAA arbitration is geared toward resolving claims centering around "workplace conduct" giving rise to "workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age, and disability."[13]  Introduction to Employment Arbitration Rules and Mediation Procedures, *available at* www.adr.org.  The arbitrators are "experienced in the field of employment law"[14] but are not necessarily trained in medicine or the valuation of physical injuries suffered on-the-job. Interpreting the parties' Agreement to include Steigerwalt's claims would require application of a set of rules not designed for his claims.  Such a incongruous result further militates against arbitration.

Lastly, although the Court has held that Steigerwalt has alleged an "intentional wrong" sufficient to withstand Terminix's Rule 12(b)(6) motion, a key issue as this case unfolds will be whether the facts developed in discovery adequately support Steigerwalt's contention that the Workers' Compensation exclusivity bar does not apply.  Nothing suggests that the AAA arbitrators appointed pursuant to its "Employment Arbitration

---

[13]   Such disputes, of course, give rise to statutory claims under Title VII, the Americans With Disabilities Act, and the Age Discrimination in Employment Act, to name just a few.

[14]   Employment Arbitration Rules and Mediation Procedures, Rule 12.

Rules and Mediation Procedures" have the slightest background or expertise in making this type of decision, or that the Procedures themselves contemplate resolving this type of issue. Based on the foregoing, the Court holds that Steigerwalt's remaining claims are not arbitrable under the parties' Arbitration Agreement.[15] Accordingly, the Court will deny Terminix's Motion to Stay the Litigation and Compel Arbitration.

### IV.

Terminix's Partial Motion to Dismiss will be granted as to all claims based on Terminix's alleged non-intentional conduct. To the extent that Counts I, II and III allege intentionally tortious conduct, the motion will be denied and these will be treated as a single count. The motion to dismiss Count IV, which asserts Terminix's respondeat superior liability for the acts of its officers, agents or employees will be denied. Terminix's Motion to Stay the Litigation and Compel Arbitration will be denied. The Court will issue an appropriate order.

Date: October 19, 2006

S/ Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.

---

[15] The Court need not reach Steigerwalt's argument that New Jersey public policy would invalidate any agreement to arbitrate a workplace injury claim excluded from the Worker's Compensation tort bar.